**LEMON LAW GROUP PARTNERS, PLC**
Jay W. Chamberlin, Esq. (PA 317191)
*jchamberlin@lemonlawgrouppartners.com*
Penn Center East Monroeville
201 Penn Center Blvd., Suite 400
Pittsburgh, PA 25235
Phone: (888)-415-0610
Fax:     (888) 809-7010
*Attorneys for Plaintiffs*
*Ryan Burd and*
*Marissa Burd*

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RYAN BURD** *and* **MARISSA BURD**, <br><br> Plaintiffs, <br><br> v. <br><br> **FCA US LLC,** <br><br> Defendant. | Civil Action No.: <br><br> **COMPLAINT** |

Plaintiffs Ryan Burd and Marissa Burd (collectively, "the Burds"), through their attorneys, Lemon Law Group Partners, PLC, allege as follows:

### PRELIMINARY STATEMENT

1.      Plaintiffs purchased a new 2022 Jeep Grand Cherokee ("Subject Vehicle"), which was manufactured by Defendant FCA US LLC ("FCA" or "Manufacturer"). After they purchased the Subject Vehicle, Plaintiffs discovered defects that substantially impair its value and safety. Plaintiffs bring this action to invoke the remedies available to them under Pennsylvania law to address FCA's failure to repair the Subject Vehicle, replace it with a conforming car, or repurchase it.

//

//

## NATURE OF THE CASE

2.  In the 21st century, American car consumers expect that a new car will perform as advertised. They have this expectation because car manufacturers provide written warranties with their vehicles that guarantee that the vehicle will be of a certain quality or it will be repaired. These expectations are bolstered by federal and state laws that grant consumers rights of action if the manufacturer fails to live up to its advertisements or its warranties.

3.  This case arises from FCA's failure to live up to its advertisements or its warranties. Because FCA has not honored its words or its guarantees, in this action, Plaintiffs bring claims for breach of express warranty, breach of implied warranty, violations of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq.*, revocation of acceptance, violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), and violations of the Pennsylvania Automobile Lemon Law ("Lemon Law").

4.  For these breaches and violations, Plaintiffs ask the Court to declare the Subject Vehicle to be defective and substantially impaired by those defects, order FCA to repurchase the Subject Vehicle, grant the Plaintiffs their incidental and consequential damages, and impose statutory damages on the Defendant. In addition, because FCA did not comply with federal and Pennsylvania law, Plaintiffs ask this Court to order FCA to pay the costs of this suit, including their attorneys' fees.

## JURISDICTION AND VENUE

5.  This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because this is an action for monetary damages that exceed $91,360.08, exclusive of interest, costs, and attorneys' fees.

//

//

6. This Court has jurisdiction pursuant to 28 U.S.C § 1331 because this is an action for monetary damages that $91,360.08, exclusive of interest, costs, and attorneys' fees that arises from violations of 15 U.S.C. § 2301, *et seq*. and authorized by 15 U.S.C. § 2310(d).

7. This Court has jurisdiction pursuant to 18 U.S.C. § 1367 because the Burds' claims under state law arise from the same actions, transactions, or events described herein.

8. The United States District Court for the Eastern District of Pennsylvania has personal jurisdiction over the Defendant FCA because, while its principal place of business is in Michigan, it has had sufficient minimum contacts with Pennsylvania, is registered to do business in Pennsylvania, conducts substantial business in Pennsylvania, has had systematic and continuous contacts within Pennsylvania, and has agents and representatives that can be found in Pennsylvania.

9. Pursuant to 28 U.S.C. § 1391, venue is proper in the United States District Court for the Eastern District of Pennsylvania because the actions, transactions, and events that form the basis for this action occurred in Northampton County, Pennsylvania and the harm to the Burds was felt in Northampton County, Pennsylvania

## THE PARTIES

### *Plaintiffs*

10. Ryan Burd and Marissa Burd (collectively, "the Burds") are residents of Pennsylvania, domiciled in Northampton County. They are the owners of the Subject Vehicle, with the VIN IC4RJKBG8N8511121, which they purchased from an authorized FCA dealership in Easton, Pennsylvania.

//

//

*Defendant*

11.     Defendant FCA US LLC ("FCA" or "Manufacturer") is a foreign limited liability company organized under the laws of State of Delaware and registered to do business in the State of Pennsylvania.  FCA's principal place of business is 1000 Chrysler Drive, Auburn Hills, Michigan 48326.  Its registered agent for service of process is CT Corporation System, 600 North 2nd Street, Suite 401, Harrisburg, Pennsylvania 17101.

**FACTUAL BACKGROUND**

*The Purchase*

12.     On or about January 18, 2022, Plaintiffs purchased the Subject Vehicle, bearing the VIN IC4RJKBG8N8511121.  Attached to this Complaint as Exhibit "A" is a copy of the Purchase Agreement.  Plaintiffs incorporate Exhibit A into this Complaint by reference.  The total sale price of the vehicle was approximately $91,360.08.

13.     Plaintiffs purchased the Subject Vehicle from Brown-Daub Inc. ("Dealer"), an authorized FCA dealership located in Easton, Pennsylvania.  Plaintiffs purchased the Subject Vehicle for their own private, personal use.

14.     At the time of purchase, the Subject Vehicle was accompanied by a written warranty which provided bumper-to-bumper coverage for a period of three (3) years or 36,000 miles and powertrain coverage for five (5) years or 60,000 miles.  This warranty extends to any repair or replacements needed during these periods or due to defects in materials or workmanship.  Attached to this Complaint as Exhibit "B" is a copy of a relevant portion of the warranty.  Plaintiffs incorporate Exhibit B into this Complaint by reference.

//

//

### *Defects in the Subject Vehicle Go Unrepaired*

15. Shortly after purchase, Plaintiffs began to have problems with the Subject Vehicle's performance. For these problems, they returned the Subject Vehicle to an authorized FCA dealership for repairs on or about six (6) occasions, which kept the Subject Vehicle out of service for at least seventy-eight (78) days. Attached to this Complaint as Exhibit "C" are copies of repair orders relating to these attempts to repair the Subject Vehicle. Plaintiffs incorporate by reference the contents of these repair orders as if set forth completely herein.

16. As described in the repair orders contained in Exhibit C, Plaintiffs repeatedly presented the Subject Vehicle to an authorized dealership for repairs expressly related to defects present in the vehicle. Plaintiffs incorporate Exhibit C, by reference, into this Complaint. Among other issues, the Subject Vehicle has defects including, but not limited to, clunking noise from front of vehicle at idle, multiple message lights illuminating including Service Airbags and Check Engine, power steering inoperable, knocking noise from behind glove box in all gears, and loud clunking noise when in Drive. Despite attempts to remedy, these defects in the vehicle persist.

17. These repair attempts occurred between April 28, 2022 and November 25, 2022. At the time of the November 25, 2022 repair attempt the mileage on the Subject Vehicle was 8,799 miles.

18. Despite these repair attempts by FCA's agents, FCA was unable to conform the Subject Vehicle to its warranties or its representations. Indeed, the defects persist. Due to the Subject Vehicle's defects and FCA's attempts to repair them, the safety, use, and value of the Subject Vehicle were substantially impaired.

//

19. Because FCA was unable to conform the Subject Vehicle to its warranties or representations, on October 28, 2022, Plaintiffs wrote to FCA to inform it that the Subject Vehicle was defective and present it with one final opportunity to repair it. In addition, Plaintiffs revoked their acceptance of the Subject Vehicle and requested that the Defendant repurchase it. Attached to this Complaint as Exhibit "D" is a copy of Plaintiffs' October 28, 2022 letter directed to Defendant GM. Plaintiffs incorporate it into this Complaint by reference.

20. To date, Defendant FCA has refused to repurchase the Subject Vehicle.

## COUNT I
## BREACH OF EXPRESS WARRANTY

21. Plaintiffs incorporate by reference the averments contained in the preceding and following paragraphs as if fully set forth herein.

22. As described herein, as part of the consideration for the contract price of the Subject Vehicle, FCA provided with it an express warranty.

23. In its warranty, FCA promises bumper-to-bumper coverage for a period of three (3) years or 36,000 miles and powertrain coverage for five (5) years or 60,000 miles.

24. In addition to these terms, under Pennsylvania law, implied in every contract is a general duty of good faith and fair dealing in its performance. This duty requires all parties to the contract to perform their obligations in good faith.

25. As described in greater detail herein, Plaintiffs repeatedly presented the Subject Vehicle to an authorized FCA dealership for repairs. Even though the dealer attempted repairs, the defects persisted.

//
//
//

26. Beyond presenting the Subject vehicle to an authorized dealership for repair, Plaintiffs wrote to FCA and notified it, under Pennsylvania law, that they believed the Subject Vehicle was a lemon. *See* Exhibit D. By this notification, Plaintiffs gave FCA the opportunity to repair or repurchase the Subject Vehicle.

27. Despite five (5) or more opportunities to fix the Subject Vehicle or replace it with a conforming vehicle, FCA failed to do so. As such FCA breached the terms of the express warranty and the implied covenant of good faith and fair dealing. Due to FCA's failure to repair the Subject Vehicle in a reasonable time, or at all, FCA's warranty failed of its essential purpose.

28. As a result of FCA's breaches, Plaintiffs have suffered monetary damages, including, incidental and consequential damages. As FCA warranty failed of its essential purpose, pursuant to 13 Pa. C.S.A. § 2719(b), the Burds are entitled to any remedy available for breach of warranty provided by Pennsylvania's implementation of the U.C.C.

WHEREFORE, Plaintiffs respectfully seek the relief set forth below.

## COUNT II
## BREACH OF IMPLIED WARRANTY

29. Plaintiffs incorporate by reference the averments contained in the preceding and following paragraphs as if fully set forth herein.

30. Every vehicle sold in the State of Pennsylvania is subject to the implied warranties of merchantability found at 13 Pa. C.S.A. § 2314. These warranties include:

   A. that the Subject Vehicle was fit for the ordinary purpose of safe, reliable transportation;

   B. that the Subject Vehicle was of good, sound, and merchantable quality;

   C. that the Subject Vehicle was free from defective parts and workmanship; and

7

D. that any defects or non-conformities in the Subject Vehicle would be cured within a reasonable time.

31. As described herein, the Subject Vehicle does not conform to these warranties because it continues to suffer from the defects described herein.

32. Plaintiffs provided FCA with at least six (6) opportunities to repair the Subject Vehicle, which kept it out of service for approximately seventy-eight (78) days. As such, FCA has had more than a reasonable opportunity to repair or replace the Subject Vehicle.

33. As a direct and consequential result of FCA's breach of these implied warranties, Plaintiffs have suffered and continues to suffer damages in an amount to be proved at trial.

WHEREFORE, Plaintiffs respectfully seek the relief set forth below.

## COUNT III
## VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT

34. Plaintiffs incorporate by reference the averments contained in the preceding and following paragraphs as if fully set forth herein.

35. The Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq.* empowers consumers to seek judicial enforcement of warranties against manufacturers like GM. Pursuant to section 2310(d) of the MMWA, consumers may seek judicial enforcement of warranties and damages, including attorneys' fees and costs, flowing from breaches of warranties by suppliers and warrantors.

//

//

36. Plaintiffs are consumers within the ambit of the MMWA because they purchased the Subject Vehicle, a "consumer product" within the meaning of § 2301(1), with a written warranty, within the meaning of § 2301(6), and implied warranties, within the meaning of § 2301(7), and are entitled to enforce these warranties against the "warrantor", within the meaning of § 2301(5).

37. Defendant is a "supplier", within the meaning of § 2301(4), and a "warrantor", within the meaning of § 2301(5), because Defendant is in the business of manufacturing motor vehicles, "consumer product[s]" within the meaning of § 2301(1), and offering them to "consumer[s]", within the meaning of § 2301(3), with "written warrant[ies]", within the meaning of §2301(6), and "implied warrant[ies]", within the meaning of § 2301(7).

38. The Subject Vehicle is a "consumer product", within the meaning of § 2301(1), because the Subject Vehicle is tangible property marketed and sold, in and amongst the several states, for personal, family or household purposes.

39. Pursuant to section 2304(d), FCA was required to remedy any defects, malfunction, or non-conformance of the subject vehicle within a reasonable time and without charge to Plaintiffs.

40. As described in greater detail herein, by failing to repair or replace the Subject Vehicle, FCA defaulted on its obligations under its written warranty and the warranties imputed to it by Pennsylvania law. By breaching its express and implied warranties it violated the MMWA.

//

//

41. Plaintiffs have repeatedly requested that FCA repair or replace the Subject Vehicle. Plaintiffs have complied with every condition of FCA's warranties imposed upon them. Nevertheless, FCA has refused to honor its obligations, repair the defects present in the Subject Vehicle, or replace the Subject Vehicle with a conforming vehicle.

42. As a result of FCA's breaches, Plaintiffs have and will continue to suffer damages resulting from the loss of use of the Subject Vehicle and the diminution of the Subject Vehicle's value.

43. As described herein, FCA has had at least six (6) reasonable opportunities to cure these defects but has failed to do so. Accordingly, the provisions of the MMWA entitle Plaintiffs to return the Subject Vehicle, without penalty, and a refund of their payment.

44. Pursuant to section 2310(d)(2) of the MMWA, Plaintiffs are entitled to recover the costs of this lawsuit, including attorneys' fees.

WHEREFORE, Plaintiffs respectfully seek the relief set forth below.

## COUNT IV
## REVOCATION OF ACCEPTANCE

45. Plaintiffs incorporate by reference the averments contained in the preceding and following paragraphs as if fully set forth herein.

46. Every buyer in the State of Pennsylvania may revoke his or her acceptance of a good when its non-conformity substantially impairs its value, as allowed by 13 Pa. C.S.A. § 2608.

47. As described in greater detail herein, the Subject Vehicle is defective.

48. Plaintiffs accepted the Subject Vehicle on the basis that if it did not conform to FCA's warranties, FCA would seasonably repair or replace the vehicle.

49. Due to the difficulty in discovering the defects present in the Subject Vehicle, Plaintiffs were unable to detect them prior to acceptance. Plaintiffs relied on FCA's assurances that if the Subject Vehicle did not conform to its warranties, it would repair or replace the vehicle.

50. As a result of the Subject Vehicle's lengthy repair history and continuing defects, Plaintiffs sought to revoke their acceptance of the Subject Vehicle through their October 28, 2022 letter. *See* Exhibit D.

51. Plaintiffs' revocation of acceptance occurred within a reasonable time after they discovered that the defects could not be cured. Indeed, Plaintiffs revoked acceptance prior to FCA's completion of its most recent repair attempt. *See* Exhibit C.

52. Plaintiffs now believe that said defects and non-conformities cannot be reasonably, or ever, cured, resulting in a loss of confidence that the Subject Vehicle can be operated safely or that it will ever reflect the value FCA promised.

53. Defendant FCA has refused to comply with Plaintiffs' revocation of acceptance and has refused to refund Plaintiffs' payment.

54. As a result, Plaintiffs are entitled to revoke acceptance and receive a full refund of their payment, together with incidental and consequential expenses including repair costs, insurance and other expenses, interest, and reasonable attorneys' fees, together with interest according to law.

WHEREFORE, Plaintiffs respectfully seek the relief set forth below.

//
//
//
//

# COUNT V
# VIOLATIONS OF THE PENNSYLVANIA
# UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW

55. Plaintiffs incorporate by reference the averments contained in the preceding and following paragraphs as if fully set forth herein.

56. FCA has violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL") 73 P.S. § 201-1 *et seq.,* by its actions as more fully described herein.

57. Under the UTPCPL, "Persons" include, but are not limited to, natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, and any other legal entities within the meaning of 73 P.S. § 201-2(2). Plaintiffs are persons within the meaning of the UTPCPL

58. In distributing, pricing, marketing, selling, warranting, and repairing vehicles in the Commonwealth, the Defendant is engaging in trade or commerce that directly or indirectly harmed consumers in Pennsylvania within the meaning of 73 P.S. § 201-2(3).

59. Specifically, FCA, by engaging in the acts and practices set forth above, has violated the UTPCPL by unfairly and deceptively distributed, marketed, sold, and warranted vehicles misrepresenting the true value of the vehicles.

60. FCA violated the UTPCPL each time it failed to repair the Subject Vehicle within a reasonable amount of time.

61. FCA's conduct as more fully described herein constitutes unfair or deceptive acts or practices within the meaning of 73 P.S. § 201-2(4), including, but not limited to, engaging in any other deceptive conduct which creates a likelihood of confusion or of misunderstanding, within the meaning of 73 P.S. § 201-2(4)(xxi).

62. FCA's conduct more fully described herein is proscribed and unlawful pursuant to 73 P.S. §201-3.

63. As a result of FCA's unfair and deceptive acts and practices, Plaintiffs have suffered and will continue to suffer ascertainable losses and damages in an amount to be determined at trial, which amounts should be awarded pursuant to 73 P.S. §201-9.2. These amounts should be trebled, in this Court's discretion, as appropriate.

WHEREFORE, Plaintiffs respectfully seek the relief set forth below.

## COUNT VI
## VIOLATIONS OF THE PENNSYLVANIA AUTOMOBILE LEMON LAW

64. Plaintiffs incorporate by reference the averments contained in the preceding and following paragraphs as if fully set forth herein.

65. The Pennsylvania Automobile Lemon Law ("Lemon Law"), 73 P.S. § 1951, *et seq.*, empowers Pennsylvania consumers to seek judicial enforcement of automobile warranties against manufacturers like FCA. Pursuant to section 1958 of the Lemon Law, prevailing plaintiffs are entitled to reasonable attorney's fees, fees for expert witnesses, and costs.

66. Plaintiffs each qualify as a "PURCHASER" within the meaning section 1952 of the Lemon Law because they purchased the Subject Vehicle for their own use and are entitled to enforce its warranty against FCA.

67. FCA is a "MANUFACTURER" within the meaning section 1952 of the Lemon Law because it is engaged in the business of manufacturing, assembling, or distributing motor vehicles and manufactures, assembles, or distributes thousands of motor vehicles throughout the United States.

68. The Subject Vehicle is a "NEW MOTOR VEHICLE" within the meaning section 1952 of the Lemon Law because the Subject Vehicle self-propelled, motorized conveyance

driven upon public roads, streets or highways which is designed to transport not more than 15 persons that was registered for the first time in this Commonwealth.

69. The Subject Vehicle suffers from "NONCONFORMIT[IES]" within the meaning section 1952 of the Lemon Law because the defects described herein substantially impair its use, value, or safety and does not conform to the manufacturer's express warranty.

70. 73 P.S. §§ 1954 - 1955 required FCA to repair the nonconformities in the Subject Vehicle within a reasonable amount of time or accept its return for a refund.

71. 73 P.S. § 1956 entitles Plaintiffs to a presumption that FCA was unable to repair the Subject Vehicle within a reasonable amount of time when the Subject Vehicle has been subject to at least three (3) repair attempts by Defendant FCA, the first of which took place during the earlier period of one (1) year or 12,000 miles and/or the Subject Vehicle was out of service for thirty (30) or more days within the earlier period of one (1) year or 12,000 miles.

72. Plaintiffs are entitled to this presumption because the Subject Vehicle was subject to six (6) repair attempts, all of which took place within the earlier period of one (1) year or 12,000 miles.

73. Because FCA has refused to repurchase the Subject Vehicle, as required by the Lemon Law, Plaintiffs are entitled to revoke the acceptance and receive a full refund of the payment, or in the alternative, to receive a replacement vehicle, and incidental and consequential expenses, including repair costs; insurance and other expenses; interest, and reasonable attorneys' fees, together with interest according to law.

//

//

//

# COUNT VII
## OPPORTUNISTIC BREACH OF CONTRACT

74. Plaintiffs hereby incorporate by reference the averments of the foregoing paragraphs as if fully set forth herein and further alleges as follows:

75. By engaging in the conduct described in this Complaint, Defendant has knowingly obtained benefits from Plaintiff, namely revenue from the purchase of the Subject Vehicle and the profits therefrom, which are actual monies and other benefits under circumstances such that it would be inequitable and unjust for this Defendant to retain them.

76. By engaging in the acts and failures to act described in this Complaint, Defendant has knowingly enriched by the savings in costs that should have been reasonably expended to repair the defective in a manner that would conform to Defendant's representations.

77. Thus, Defendant will be unjustly enriched if it is permitted to retain the benefits derived from their failure to deliver a vehicle that conformed to its marketing.

78. A claim for opportunistic breach provides recourse for conscious advantage taking or opportunistic calculation that leads to some gain exceeding the injury from the breached contract. Opportunistic breach of contract is a theory of restitution articulated in the Restatement (Third) of Restitution and Unjust Enrichment ("Restatement") § 39. It is available when defendant deliberately breaches a contract in a manner that "results in profit to the defaulting promisor and the available damage remedy affords inadequate protection to the promisee's contractual entitlement." *Enslin v. Coca-Cola Co.*, 1366 F. Supp. 3d 654, 677 (E.D. Pa. 2015) (quoting *In re 400 Walnut Assocs., L.P.*, 506 B.R. 645, 668 (E.D. Pa. 2014)). Here Volkswagen has been enriched beyond the monetary damages to Plaintiffs and it would be unjust for the Defendants to retain those benefits. *See Kansas v. Nebraska,* 574 U.S. 445, 462 (2015); Restatement (third) of Restitution and Unjust Enrichment § 39(3) & cmt. f.

79. Defendant was unjustly enriched because it accrued savings by failing to properly ensure that the Subject Vehicle was delivered or repaired in a manner that conformed with its marketing.

80. Plaintiff is therefore entitled compensatory damages in an amount to be determined at trial, disgorgement, or the imposition of a constructive trust upon the monies derived by the Defendant by means of the above-described actions.

WHEREFORE, Plaintiffs respectfully seeks the relief set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Ryan Burd and Marissa Burd request the Court to enter the following relief:

(a) Declare the Subject Vehicle to be defective and nonconforming and declare FCA's conduct to have violated its express and implied warranties;

(b) Declare unlawful the acts and practices alleged herein, and enjoin FCA from committing the acts alleged herein;

(c) Enter judgment against FCA for the violations alleged herein;

(d) Award the actual and consequential damages incurred by Plaintiffs as a result of the wrongful acts complained of, along with pre-judgment and post-judgment interest at the maximum rate allowed by law;

(e) Order FCA to accept repurchase of the Subject Vehicle;

(f) Award statutory damages as set forth herein;

(g) Award treble damages or multiple damages by operation of law;

(h) Award exemplary or punitive damages;

(i) Disgorge Defendant's profits;

(j) Award Plaintiffs the costs of this action, including reasonable attorney's fees, and where applicable, expert fees; and

(k) Award such other and further relief as the Court may deem just and appropriate.

Respectfully submitted,

Dated: February 17, 2023

*s/ Jay W. Chamberlin*
Jay W. Chamberlin, Esq. (PA 317191)
*jchamberlin@lemonlawgrouppartners.com*
**Lemon Law Group Partners, PLC**
Penn Center East Monroeville
201 Penn Center Blvd., Suite 400
Pittsburgh, PA 25235
Phone: (888)-415-0610
Fax:   (888) 809-7010
*Attorneys for Plaintiffs*
*Ryan Burd and*
*Marissa Burd*

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable in this cause.

Respectfully submitted,

Dated: February 17, 2023

*s/ Jay W. Chamberlin*
Jay W. Chamberlin, Esq. (PA 317191)
*jchamberlin@lemonlawgrouppartners.com*
**Lemon Law Group Partners, PLC**
Penn Center East Monroeville
201 Penn Center Blvd., Suite 400
Pittsburgh, PA 25235
Phone: (888)-415-0610
Fax:    (888) 809-7010
*Attorneys for Plaintiffs*
*Ryan Burd and*
*Marissa Burd*